**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARENCE D. SCHREANE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-15-1204** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **ROBERT MARR,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

## I.    Introduction

Plaintiff Clarence D. Schreane, a federal inmate formerly housed at the United States Penitentiary at Lewisburg (USP-Lewisburg), in Lewisburg,[1] Pennsylvania, commenced this *Bivens* action on June 19, 2015.[2]  Named as defendants are the following USP-Lewisburg employees: Corrections Counselor Robert Marr; Disciplinary Hearing Officer (DHO) B. Chambers; T. Lynn; Corrections Counselor Diltz; Supervisory Correctional Systems Specialist D. Olsheskie; and Paramedic Sarah Dees.  Mr. Schreane alleges that Defendants were deliberately indifferent to his serious medical

---

[1] Mr. Schreane is currently housed at USP-Florence (High), in Florence, CO. (ECF No. 68.)

[2] *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.ED.2d 619 (1971).  *Bivens* stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978).

needs, impaired his access-to-the-courts, issued him a retaliatory misconduct and denied him due process at his disciplinary hearing.

Presently pending is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).  (ECF No. 21.)  Also pending before the Court is Mr. Schreane's motion for Declaratory Judgment (ECF No. 34), Motion for Extension of Time (ECF No. 52), and Motion for an Order (ECF No. 69).

For the reasons set forth below, the motion to dismiss will be denied and the motion for summary judgment will be granted.  Mr. Schreane's additional motions will be denied as moot and summary judgment will be issued in favor of the Defendants.


## II.    Standards of Review

Defendants' pending dispositive motion is captioned as a motion to dismiss and motion for summary judgment.  (ECF No. 21.)  It is supported by evidentiary materials outside the pleadings.  Mr. Schreane's opposition to Defendants' motion is entitled "Plaintiff's Objection to Defendant Motion for Summary Judgments" and also relies on materials outside of the pleadings. (ECF No. 44.)

Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).  Based on the above, Defendants' motion will be treated as solely seeking summary judgment.  *See Latham v. United States*, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

Federal Rule of Civil Procedure 56 sets forth the standards and procedures for granting a motion for summary judgment.  Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law."  *MacFarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 - 48, 106 S.Ct. 2505, 2509 - 10, 91 L.Ed.2d 202 (1986).

A "material" fact is any fact that might affect the outcome of a suit under the governing substantive law.  *Gonzalez v. Sec'y of Dept. of Homeland Sec.,* 678 F.3d 254, 261 (3d Cir. 2012).  An issue of material fact is "genuine" if supported by evidence

such that a reasonable jury could return a verdict in the non-moving party's favor. *Id*. at 248, 106 S.Ct. at 2510.

In reviewing a motion for summary judgment, the court must view all facts and draw all reasonable inferences "in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)(internal quotation marks omitted).  To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact.  *Santini v. Fuentes*, 795 F.3d 410 (3d Cir. 2015) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2553).  If this burden is met, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."  *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citation and internal quotation marks omitted).  Rather, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001)(citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).  Failure to properly support or contest an assertion of fact may result in the court considering the fact undisputed for the purpose of the motion.  Fed. R. Civ. P. 56(e).

### III.    Statement of Material Facts

From the pleadings, declarations and exhibits submitted therewith, the following facts are ascertained as undisputed or, where disputed, reflect Mr. Schreane's version of the facts, pursuant to this Court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2510.

Mr. Schreane was housed at USP-Lewisburg from July 6, 2011 through July 3, 2013, and then again from October 2, 2013 through July 22, 2015.  (ECF No. 32, Defs.' Statement of Material Facts (DSMF), ¶ 2.)  He has a disciplinary history that includes, but is not limited to: refusing orders; threatening bodily harm; disruptive conduct; possession of a dangerous weapon; and making sexual proposals/threats.  (DSMF ¶ 3.)

### A.    Mr. Schreane's Disruptive Behavior and Calculated Use of Force Event

On February 20, 2014, at approximately 11:45 a.m., Counselor Marr approached Mr. Schreane in his cell to return legal mail he had tried to send out without postage. During the discussion, Mr. Schreane became agitated and threatened Counselor Marr and his family with violence.  (DSMF ¶ 5.)  Mr. Schreane stated "if you think I am

---

[3]  In support of their summary judgment motion, Defendants submit a statement of material facts.  (ECF No. 32.)  Because Mr. Schreane fails to properly oppose Defendants' statement of material facts (ECF No. 42) as required by Middle District Local Rule 56.1, facts submitted by Defendants are deemed admitted.

playing fucking games with you, your family will find out what fucking games are when my people get in contact with them, then we will see what fucking games are." (ECF No. 32-1, Incident Report 2550915, p. 34.) Due to Mr. Schreane's disruptive behavior, his display of imminent violence and not being in control of himself physically or emotionally, the Acting Warden was notified and authorized staff to place Mr. Schreane in ambulatory restraints. (DSMF ¶ 6; ECF No. 32-1, pp. 26 - 29.) A use of force team was assembled to conduct the calculated use of force of extracting Mr. Schreane from his cell and placing him in ambulatory restraints. (*Id.*) The event was videotaped. ECF No. 32-1, p. 28.)

Following the cell extraction and application of restraints, a health services staff member (J. Robertson) performed an injury assessment of Mr. Schreane. (DSMF ¶ 23; ECF No. 32-1, pp. 31 - 32.) No significant findings or apparent distress was noted. (*Id.*) It was noted that the ambulatory restraints were applied appropriately to permit adequate blood flow to the inmate's extremities, and that Mr. Schreane sustained no injuries and offered no chief complaint. (*Id.*)

### B.     Restraint Checks

In accordance with BOP Program Statement (PS) 5666.06 (ECF No. 32-1, pp. 47 - 69), prior to any calculated use of force, the ranking custodial official, a designated mental health professional, and others confer and gather pertinent information about the inmate and the immediate situation. Based on their assessment of that information,

they identify staff to attempt to obtain the inmate's voluntary cooperation, and using the knowledge they gained about the inmate and the incident, determine if use of force is necessary.  (DSMF ¶ 7.)   The policy authorizes staff "to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate: (a) Assaults another individual; (b) Destroys government property; (c) Attempts suicide; (d) Inflicts injury upon self; or (e) Becomes violent or displays signs of imminent violence."  (DSMF ¶ 11.)   Pursuant to the policy "[r]estraints should remain on the inmate until self-control is regained."  (DSMF ¶ 12.)  Restraints are not to be used in a manner to cause unnecessary physical pain or extreme discomfort.  (DSMF ¶ 13.) When applied, "staff will use sound correctional judgment to ensure unnecessary pressure is not applied to the inmate."  (DSMF ¶ 15.)  "Ambulatory restraints are defined as approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of human basic needs without staff intervention."  (DSMF ¶ 14.) Fifteen-minute scheduled checks are required for inmates place in restraints.  (DSMF ¶ 16.) Two-hour scheduled checks by Lieutenants are required and "qualified health personnel ordinarily are to visit the inmate at least twice during each eight hour shift." (DSMF ¶ 18 and ¶ 24.)

Counselor Marr issued Mr. Schreane Incident Report 2550915 following the incident and calculated use of force.  (DSMF ¶ 8.)  Plaintiff was kept in ambulatory restraints from 1:00 p.m. until 8:00 p.m. on February 20, 2014.  (DSMF ¶ 9 and ¶ 10.) In accordance with the BOP's restraint policy, staff made fifteen-minute checks on Mr.

Schreane while he was in restraints.  Fifteen-minute checks were completed between 1:06 p.m. and 8:00 p.m.  (DSMF ¶ 17; ECF No. 32-1, pp. 38-39.)  At one point in time Mr. Schreane is alleged as saying "That counselor had it coming."  (*Id*., p. 39.)  The required two-hour Lieutenant checks were also completed in accordance with policy. (DSMF ¶ 19; ECF No. 32-1, pp. 41 - 42.)  During each two-hour Lieutenant check, Mr. Schreane was offered use of the toilet.  (DSMF 32; ECF No. 32-1, pp. 41 - 42.)  A Lieutenant checked Mr. Schreane's restraints at 2:00 p.m., 4:00 p.m., 6:00 p.m. and at 8:00 p.m. when they were removed.  (DSMF ¶ 20.)  Mr. Schreane was agitated, exhibited a poor attitude and cursed staff during these checks until the 8:00 p.m. check. (DSMF ¶ 21.)  Mr. Schreane's restraints were removed at 8:00 p.m. on February 20, 2014, by Lieutenant Johnson once the calm effect was achieved.  (DSMF ¶ 22; ECF No. 32-1, p. 43.)

When Mr. Schreane was initially placed in restraints, J. Robertson, a member of the medical staff assessed him.  (ECF No. 32-1, pp. 31 - 32.)  At that time he had "[g]ood palpable distal pulses and capillary refill less than two seconds in all four extremities ... [and] noted to have movement of fingers and toes."  (*Id*.)  Mr. Schreane voiced no complaints at that time.  (*Id*., p. 31.)  During the relevant time period Defendant Dees performed two health services restraint checks, one at 4:00 p.m. and another at 6:00 p.m.  (DSMF ¶ 25; ECF No. 32-1, pp. 45 - 46.)  Her Clinical Encounter notes from the 4:00 p.m. check indicated Mr. Schreane was alert and oriented in no acute distress.  She noted Mr. Schreane "to have the restraints pushed up on to his

forearms causing bilateral swelling in his hands." (DSMF ¶ 26; ECF 32-3, p. 7.)  She counseled Mr. Schreane "on the importance of keeping the restraints in their proper position." (*Id.*)  Plaintiff was noted to have good circulation below the restraints which moved freely. (*Id.*)  At Ms. Dees' 6:00 p.m. visit, she arrived to find Mr. Schreane sitting on the lower bunk in the cell, alert, oriented, and not in acute distress. (DSMF ¶ 27; ECF 32-3, pp. 10 -13.)  Again she noted that Mr. Schreane pushed the restraints up on to his forearms causing bilateral swelling in both hands.  She repositioned the restraints and counseled him on the importance of keeping them in their proper position. (ECF 32-2, pp. 10 - 13.)  Mr. Schreane was noted to have good circulation below the restraints with less than 2 second capillary refill.  His restraints moved freely and he voiced no complaints at that time. (*Id.*)

## C.     Mr. Schreane's DHO Hearing Re: Incident Report 2550915

Counselor Marr issued Mr. Schreane Incident Report 2550915 on February 20, 2014. (ECF No. 32-2, p. 3, Incident Report 2550915.)  On March 11, 2014, DHO Chambers held a hearing concerning Incident Report 2550915. (DSMF ¶ 33; ECF No. 32-4, pp. 1 - 10, Chambers Decl. & DHO Report.)  Defendant Lynn was Mr. Schreane's staff representative at the DHO hearing. (DSMF ¶ 34.)  She requested DHO Chambers recuse himself because he was a named defendant in another action filed by Mr. Schreane. (DSMF ¶ 35.)  DHO Chambers denied that request. (DSMF ¶ 36.)  At the conclusion of the hearing DHO Chambers found Mr. Schreane guilty of the misconduct

and sanctioned him to loss of 27 days good conduct time and a loss of 20 days of non-vested good conduct time.  (DSMF ¶ 38; ECF No. 32-4.)  Although Mr. Schreane properly exhausted his administrative remedies with regard to Incident Report 2550915 it still remains on Mr. Schreane's disciplinary record.  (DSMF ¶ 39; DSMF ¶ 61 - ¶ 63; ECF No. 32-1, pp. 16, Inmate Discipline Data Chronological Disciplinary Record.)

### D.    Facts Concerning the Operation of the Mailroom

Defendant Olsheskie is the Supervisory Correctional Systems Specialist at USP-Lewisburg.  (DSMF ¶ 40; ECF No. 32-5, Olsheskie Decl., pp. 1 - 2.)  His duties include oversight of the Inmate Records Office, Mail Room, and Receiving and Discharge functions.  (DSMF ¶ 41; ECF No. 32-5, Olsheskie Decl., pp. 1 - 2 and Position Description, pp. 4 - 11.)  The mailroom processes hundreds, if not thousands of pieces of mail daily.  (DSMF ¶ 42.)  It is located in a different area of the institution than Mr. Olsheskie's office.  (DSMF ¶ 43.)

Mr. Olsheskie's interaction with the mail room is fairly limited.  Should a mail room staff member have a question concerning a piece of mail, they may consult with Mr. Olsheskie.  (DSMF ¶¶ 44 - 45.)  Otherwise, Defendant Olsheskie is not personally involved with the daily processing of the mail.  (DSMF ¶ 46.)  Defendant Olsheskie was not aware of any claim by Mr. Schreane that he was prevented from receiving a magazine in April - May 2014.  (DSMF ¶ 47.)

### E.    Exhaustion of Administrative Remedies

The BOP has established an administrative remedy procedure with respect to inmate complaints found at 28 C.F.R. ¶ 542.10, *et seq.*  (DSMF ¶ 48; ECF No. 32-1, Romano Decl., ¶ 7.)  Inmates must informally present their complaints to the staff in order to attempt to resolve the matter.  (DSMF ¶ 49; 28 C.F.R. § 542.13(a).)  If the informal resolution is unsuccessful, the inmate then has twenty (20) calendar days after the complained about event to execute the appropriate form to bring the matter to the attention of the Warden.  (DSMF ¶ 50; 28 C.F.R. § 542.13(a).)  The Warden must respond to the inmate's complaint within twenty (20) calendar days.  (DSMF ¶ 51; 28 C.F.R. § 542.18.)  If the inmate is dissatisfied with the Warden's response, the inmate may then appeal to the Regional Director within twenty (20) calendar days.  (DSMF ¶ 52; 28 C.F.R. § 542.15(a).)  If the Regional Director's response is unsatisfactory, the inmate has thirty (30) calendar days to appeal to the BOP's Central Office.  (DSMF ¶ 53; 28 C.F.R. § 542.15(a).) An exception is made for appeals of DHO decisions, which are first raised directly to the Regional Office level and then to the Central Office level. (DSMF ¶ 54; 28 C.F.R. § 542.14(d)(4).)  If a remedy is rejected, it is returned to the inmate and the inmate is provided with a written notice explaining the reason for the rejection, but a copy of the remedy is not ordinarily maintained by the BOP.  (DSMF ¶ 55; 28 C.F.R. § 542.17(a).)  An appeal to the Central Office is the final step in the BOP's administrative remedy process.  (DSMF ¶ 56; 28 C.F.R. § 542.10.)

A review of the BOP's SENTRY computer generated Administrative Remedy Retrieval for Mr. Schreane, performed on October 16, 2015, generated many results. (DSMF ¶ 57.)  A limited search, narrowed to February 1, 2014 through October 14, 2015, revealed that Mr. Schreane filed twenty-three (23) administrative remedies. (DSMF ¶ 58; ECF No. 32-1, pp. 71 - 83.)  The twenty-three (23) remedies concerned disciplinary proceedings, the delivery of magazines, the tampering of Mr. Schreane's mail, unsanitary conditions for drawing blood, medical treatment, mail issues, the preservation of surveillance video and his access to the law library.  (DSMF ¶ 59; ECF No. 32-1, pp. 71 - 83.)  Only six (6) of Mr. Schreane's twenty three (23) administrative remedies filed between February 1, 2014 and October 14, 2015, were appealed to the Central Office level.  (DSMF ¶ 60; ECF No. 32-1, pp. 85 - 88.)

Remedy number 778030-A1, received at the BOP's Central Office on July 15, 2014, pertains to Incident Report number 2550915, issued by Counselor Marr.  (DSMF ¶ 61; ECF No. 32-1, p. 86.)  It was denied by Central Office on August 13, 2014. Defendants concede that Mr. Schreane properly exhausted his claims related to Incident Report number 2550915.  (DSMF ¶¶ 62 - 63;  ECF No. 32-1, p. 86.)

Remedy number 773875-A1, received by the BOP's Central Office on August 5, 2014, concerned a Unit Disciplinary Committee (UDC) finding related to Incident Report number 2587054 which is not at issue in this action.  (DSMF ¶ 65;  ECF No. 32-1, p. 74.)

Remedy number 782605-A1 was received by the BOP's Central Office on August 12, 2014, and concerns a UDC finding related to Incident Report number 2587054.  (DSMF ¶ 65;  ECF No. 32-1, p. 87.)  Mr. Schreane's appeal was rejected on September 15, 2014, as untimely.  He was advised to "obtain a staff memo stating the reason for [his] untimeliness and resubmit [his] appeal to the regional office for review and response."  (ECF No. 32-1, p. 87.)

Remedy number 773875-A2, received by the BOP's Central Office on October 6, 2014, relates to a UDC finding concerning Incident Report number 2563086.  (DSMF ¶ 66;  ECF No. 32-1, p. 87.)  This incident report is not at issue in the instant Complaint. (DSMF ¶ 66.)

On December 18, 2014, remedy number 796160-A1 was received by the BOP's Central Office.  (DSMF ¶ 67;  ECF No. 32-1, p. 88.)  It pertains to Mr. Schreane's claim that he "never received magazines" he paid for while housed at USP-Lewisburg.  (ECF No. 32-1, pp. 88.)  The BOP Defendants concede Mr. Schreane's exhaustion of this issue.  (DSMF ¶ 68.)

Remedy number 813593-A1 was received by the BOP's Central Office on May 27, 2015, and addresses Mr. Schreane's claim that USP-Lewisburg staff tampered with his mail.  (DSMF ¶ 69;  ECF No. 32-1, p. 88.)  The appeal was denied on July 9, 2015. This issue is properly exhausted.  (DSMF ¶ 70.)

Absent from the administrative remedies filed to final review are grievances concerning the following claims Mr. Schreane raises in his Complaint:  (1) Defendant

Marr denied Mr. Schreane postage; (2) Defendant Diltz denied Plaintiff a letter concerning his untimely filing of a DHO Administrative Remedy to the Regional Office; and (3) Defendant Dees was deliberately indifferent to his medical needs on February 20, 2014, while he was in ambulatory restraints.  (DSMF ¶ 71.)

## IV.    Discussion

### A.    Mr. Schreane Failed to Exhaust Several of his *Bivens* Claims.

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002).  There is no "futility" exception to the administrative exhaustion requirement.  *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002)(citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)). The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368 (2006).  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in the procedural default of a claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  Dismissal of an inmate's claim is appropriate when the prisoner has failed to exhaust his available administrative remedies before bringing a civil-rights action.  *Oriakhi v. United States*, 165 F. App'x 991, 993  (3d Cir. 2006) (per curiam) (nonprecedential) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002)).

All individuals incarcerated in institutions operated by the BOP may challenge any aspect of their confinement using the BOP's administrative remedy process. (DSMF ¶¶ 48 - 56; 28 C.F.R. § 542.10, *et seq*.)  The undisputed facts demonstrate that Mr. Schreane properly exhausted six (6) administrative remedies between February 1, 2014 and October 14, 2015.  (DSMF ¶ 60.)  The exhausted administrative remedies concern Incident Report 2550915 (issued by Counselor Marr); three UDC actions that are not subject of this lawsuit; his failure to receive magazines he ordered while at USP-Lewisburg; and a claim that USP-Lewisburg staff were tampering with his mail. (DSMF ¶ 63 - ¶ 69.)  Mr. Schreane fails to provide any evidence to demonstrate his administrative exhaustion of claims concerning Counselor Marr denying him stamps, or that Defendant Diltz failed to provide him a letter stating reasons for his untimely filing of a DHO appeal to the Regional Office, or that Defendant Dees was deliberately indifferent to his medical needs on February 20, 2014, while he was in ambulatory restraints.  Accordingly, Defendants Marr, Diltz and Dees are entitled to summary judgment as to these claims.

> **B.      Mr. Schreane Fails to State a Claim against**
> **        Defendant Olsheskie.**

"[I]ndividual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted' unconstitutionally."  *Wood v. Moss,* ____ U.S. ____, ____, 134 S.Ct. 2056, 2070, 188 L.Ed.2d 1039 (2014) (quoting *Iqbal*, 556 U.S. at 683, 129 S.Ct. at 1952).  To establish liability for the deprivation of a constitutional right, an

individual government defendant must have personal involvement in the alleged wrongs; liability cannot be predicated based on the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012).

This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces to them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations").  A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).  It is also "not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did."  *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

The United States Court of Appeals for the Third Circuit has recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they

participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)) (internal quotations omitted).

Defendant Olsheskie argues that Mr. Schreane has failed to allege his personal involvement in the loss of his magazines or the tampering of his mail simply based on his employment as the Supervisory Correctional Systems Specialist who oversees several areas, including the mailroom. After careful review, the Court agrees.

The undisputed record before the Court reveals that while Defendant Olsheskie had oversight of the mailroom, his office is not located near the mailroom and his interaction with the mailroom staff is limited. (DSMF ¶¶ 40 - 44.) He is not involved in the daily processing of the mail and was not aware of the issue of Mr. Schreane's missing magazines prior to the initiation of this lawsuit. (DSMF ¶¶ 46 - 47.) Mr. Schreane states that it is "hard to believe that Olseskie (sic) was not notified, or had any knowledge of" his loss of magazines. (ECF No. 42, p. 6.) He argues that mishandled or lost mail is reported to the mailroom supervisor, and therefore, Mr. Olsheskie should have known of his lost magazines. (ECF No. 43, Schreane Aff., ¶ 29.) These statements, even if true, would at best show the Defendant's after-the-fact knowledge of the loss of his mail but not his personal contemporaneous involvement in the constitutional harm. Likewise, these statements alone also do not demonstrate

that Defendant Olsheskie established and maintained a policy, practice, or custom which directly caused the alleged constitutional violation.

The Court has also examined the documents Mr. Schreane submits in support of his Complaint as well as those in opposition to Defendants' motion that relate to his administrative remedies and personal investigation into the loss of his mail.  *See* ECF No.  1-1, pp. 72 -86 and ECF No. 42, pp. 9 - 10.   None of the proffered documents implicate Mr. Olsheskie's involvement in, or knowledge of, the loss of his magazines. Accordingly, Defendant Olsheskie is entitled to summary judgment on this claim.


**C.     Due Process Claims Against Chambers and Lynn Based on Disciplinary Proceedings Stemming from the February 20, 2014 Incident Report are *Heck* Barred.**

The sanctions imposed against Mr. Schreane during his DHO hearing were the result of the February 20, 2014 incident report issued by Counselor Marr.   As Defendants correctly point out, Mr. Schreane's claims that Lynn or DHO Chambers violated his due process rights in connection with his disciplinary hearing are barred by the favorable termination rule announced in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994), and extended to prison disciplinary proceedings that result in the loss of good time credit, thus, affecting the inmate's period of incarceration, in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); s*ee also Torres v. Fauver*, 292 F.3d at 143 (3d Cir. 2002).  Yet, under some circumstances a prisoner may bring a *Bivens* claim for monetary damages based on the denial of due

process during a prison disciplinary hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 554, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) (stating that plaintiffs § 1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct").  However, such due process claims cannot be brought in a *Bivens* action where the claims "necessarily imply the invalidity of the punishment imposed" unless the plaintiff shows that the sanctions have been overturned.  *See Balisok*, 520 U.S. at 648, 117 S.Ct. at 1589 (finding claims for declaratory and monetary relief based on allegations that plaintiff was denied the opportunity to present a defense and that hearing officer was biased could not be brought pursuant to § 1983); *Heck*, 512 U.S. at 486 - 87, 114 S.Ct. at 2372 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

First, to the extent Mr. Schreane seeks to assert a due process violation against Counselor Marr for issuing him a false misconduct, this claim, without more, fails. *Smith v. Mensinger*, 293 F.3d 631, 653 (3d Cir. 2002) (citing *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986) (""[S]o long as certain procedural requirements are

satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.")

Here it is undisputed that Mr. Schreane exhausted the BOP's administrative remedy process relating to DHO Chambers' disciplinary report finding him guilty of threatening another with bodily harm.  (DSMF ¶ 63.)  It is also undisputed that Incident Report number 2550915, issued by Counselor Marr, still remains on Mr. Schreane's disciplinary history.  (DSMF ¶ 39.)  It is clear that Mr. Schreane is challenging the result of his disciplinary hearing, not simply the constitutionality of the procedures used during those proceedings.  He seeks declaratory and injunctive relief in addition to monetary damages.   Mr. Schreane claims that Defendant Lynn failed to provide adequate representation as his staff representative and that Defendant Chambers was not an impartial DHO.  These claims are a collateral attack on the standing disciplinary finding and sanctions.   A favorable outcome on either claim would necessarily imply the invalidity of the prison disciplinary finding and sanctions.   Consequently, *Heck* precludes the Court from considering such claims until such time as the disciplinary finding is invalidated through a habeas corpus action or some other appropriate means.

### D.   Mr. Schreane's Retaliation Claim against Counselor Marr.

Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional.  *Bistrain v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).  It is well settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may

nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224 - 25 (3d Cir. 2000) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)).

To prevail on a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered, at the hands of a state actor, an adverse action; and (3) his constitutionally protected conduct was a substantial or motivating factor in the state actor's decision to discipline him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (internal citations omitted).

The filing of grievances or a lawsuit satisfies the constitutionally protected conduct prong of a retaliation claim. *Mearing v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (per curiam) (citing *Millhouse v. Carlson*, 652 F.2d 371, 373 - 74 (3d Cir. 1981)). To show an "adverse action," the prisoner plaintiff must demonstrate that the defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citing *Allah,* 229 F.3d at 225). The third prong of a *prima facie* case of retaliation may be satisfied with "evidence of: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Watson*, 834 F.3d at 424 (internal citations omitted). "In the absence of that proof the plaintiff must show that the 'evidence gleaned from the record as a whole' the trier of the fact should infer

causation." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

If the prisoner establishes a *prima facie* case of retaliation, the burden then shifts to prison officials to show by a preponderance of the evidence that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."). *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

While "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence," the Third Circuit Court of Appeals recently clarified in *Watson* that "a plaintiff can make out a retaliation claim even though the [misconduct] charge against them may have been fully supported." *Watson*, 834 F.3d at 425 - 26. The Third Circuit Court of Appeals in *Watson* clarified that a disciplinary hearing finding of guilt based on "some evidence" will not bar a First Amendment retaliation claim. *Id*. at 431 (Ambro, J., concurring). "Where there is direct evidence that retaliation drove a charging decision," the inmate's finding of guilty alone "does not shield a defendant from liability." *Id*. at 430.

When "evaluating the legitimacy of a misconduct report, [the Court] considers 'the quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad

discretion [the Court] must afford them.'" *Williams v. Folino*, 664 F. App'x 114, 148 - 149 (3d Cir. 2016) (quoting *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016).

In *Watson*, the Third Circuit Court of Appeals held that a state inmate who was found guilty of the possession of contraband, a broken radio, could sustain a retaliation claim for the misconduct because "Watson's broken radio was not so 'clear and overt' a violation that [the Court could] conclude that he would have been written up if he had not also given prison officials 'a hard time'." *Watson*, 834 F.2d at 426. In reaching its conclusion the Court, relying on the summary judgment record, noted that there was evidence that other inmates with similarly broken radios did not have them confiscated or received a misconduct. (*Id*.) The Court also noted that Watson did not receive the misconduct when his radio was confiscated. (*Id*.) Based on this information the Court held that "a reasonable fact finder could conclude that the misconduct was issued in retaliation for Watson's statement that he was going to file a grievance, and not in furtherance of legitimate penological goals." (*Id*.)

Here, Mr. Schreane alleges Counselor Marr sought to retaliate after learning he filed a lawsuit against other prison staff and provided a declaration in that matter. As a result of Counselor Marr's incident report, Plaintiff suffered various adverse consequences, including the loss of good conduct time. Where Mr. Schreane's retaliation claim fails is on the third prong. Mr. Schreane fails to provide any "direct evidence" to create a genuine issue of material fact that his litigation activities motivated

Counselor Marr to charge him with a misconduct.[4]  Based on the undisputed evidence in the record, Counselor Marr wrote the Incident Report charging Mr. Schreane with threatening bodily harm after he said "if you think I am playing fucking games with you, your family will find out what fucking games are when my people get in contact with them, then we will see what fucking games are".  (ECF No. 32-3, Incident Report 2550915.)   Mr. Schreane was found guilty of threatening Counselor Marr and the Incident Report remains on Mr. Schreane's disciplinary record.   Staff other than Counselor Marr described Mr. Schreane at the time as "extremely agitat[ed] and began cursing ... and threatened imminent violence towards [Counselor Marr] and his family." (ECF No. 32-1, p. 28).  "Due to inmate Schreane's continued disruptive behavior, his display of imminent violence and not being in control of himself physically or emotionally," the Acting Warden authorized his placement in ambulatory restraints. (*Id*.)  While in restraints Mr. Schreane is reported to have told prison staff that "[t]hat counselor had it coming."  (*Id*., p. 39.)

Within the correctional setting, threats by prisoners of physical harm to others cannot be ignored.  Mr. Schreane's threats were a "clear and overt" violation of prison policy.   There is no evidence presented by Mr. Schreane that similar threats are

---

[4]  To be clear, the issue before the Court is whether there is a quantum of evidence of the misconduct to determine whether the prison officials' decision to discipline Mr. Schreane for his violation of prison policy, threatening another with bodily harm, was within the broad discretion courts must afford prison administrators.  The Court is not determining whether Mr. Schreane's finding of guilty was based on "some evidence" or whether his Due Process rights were violated during the course of his disciplinary hearing.

overlooked or ignored by prison staff.  As DHO Chambers noted, threats against staff members "inherently jeopardizes the security and good order of the institution." (ECF No. 32-4, p. 10).  And where, as here, Mr. Schreane's threats of harm extended into society "beyond the prison walls ... the Federal Bureau of Prisons has a statutory responsibility to" act.  (*Id*.)

Mr. Schreane's statement that Counselor Marr fabricated the incident as a pretext for retaliating against him after Counselor Marr provided a declaration in a case, at a summary judgment, does not advance a finding of retaliatory motive.  Moreover, Mr. Schreane, given the opportunity to oppose Defendants' summary judgment motion on this claim fails to provide an direct evidence that retaliation drove Counselor Marr's decision to issue the misconduct.  His request to deny Defendants' summary judgment on this issue is based on his request that Counselor Marr and he both be given polygraph test to determine the truth.  Summary judgment cannot be avoided by resorting to speculation, conclusory statements or personal opinion or belief "he must provide competent evidence from which a rational trier of fact can find in his favor." *Turner v. Sec'y of Pa. Dep't of Corr.,* No. 16-3543, 2017 WL 1097098, at *2, n. 2 (3d Cir. Mar. 23, 2017).

Because Mr. Schreane points to no facts from which a reasonable fact finder could infer that Counselor Marr's issuance of the misconduct, for threatening bodily harm, was motivated by a desire to retaliate against him for engaging in protected activity.  Based on the uncontradicted record before the Court, Counselor Marr's

misconduct charge was legitimate and not retaliatory.  Defendant Marr is entitled to summary judgment on this issue.

**V.      Conclusion**

For the above stated reasons, Defendants' Motion for Summary Judgment will be granted.

An appropriate order follows.

**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  April 3, 2017**